Good morning, your honors. I may have pleased the court. Adam Doyle appearing on behalf of Appellant Jeronimo Hernandez-Reyes. Your honors, this case is about someone who had outstanding equities, who showed up late for his immigration hearing, and was deported in absentia without ever being told that he could then move to reopen those proceedings. Now, when Mr. Hernandez-Reyes then moved to dismiss the indictment against him years later, based upon that due process violation, the district court failed to recognize controlling Ninth Circuit case law dealing with the ability of a defendant or a petitioner in the immigration proceedings after an in absentia deportation. In dealing with the prejudice prong of the Mendoza-Lopez analysis, the district court simply said that Mr. Hernandez-Reyes could never show prejudice because the reason that he had showed up late to his immigration hearing did not constitute exceptional circumstances under the Ninth Circuit case law. That is flawed. The Ninth Circuit failed to realize that apart from Sharma v. INS and apart from Valencia-Fergoso v. INS, cases which focused on the reason for a petitioner being late, there are also cases such as Singh v. INS and Chet Juarez v. Ashcroft that take a more holistic approach to these situations. Because the district court did not recognize that there was this more holistic approach, it believed Mr. Hernandez was completely foreclosed from ever reopening his proceedings and that he could then not show prejudice. That was the case. But isn't the inquiry under Singh whether there is unusual and compelling circumstances which would allow an exception to this exceptional circumstances rule? Yes, Your Honor. The test is whether, taken on the whole, whether the petitioner could show exceptional circumstances to reopen. What are they here? Here, Your Honor, and I want to put forth that I think the most important factor in this type of analysis is whether the petitioner had a motive to delay the proceedings, because that's really what these cases seem to say. In Singh, it said that the petitioner had, because the petitioner had no motive to delay the proceedings inevitably, that it was clear that that's not what was going on here. And that's really the policy of the in absentia deportation, is because people were not showing up for their hearings, and they were delaying them purposefully. In Singh, there was a very unusual situation in which he mistook the time and had a track record and was entitled to some relief. So the circumstances here, what relief was he entitled to here? Well, here, Mr. Hernandez-Reyes had already submitted a petition for cancellation of removal, and he was, in fact, statutorily eligible for that cancellation of removal. Now, the Court had that petition with it, but because he was late, the Court was late. Why was he late? According to Mr. Hernandez-Reyes, he was late because he had to travel from Lancaster, California to San Diego. He had some traffic, and that was the reason for being late. Now, it's not as strong of a reason as what occurred in Singh v. INS. However, there are other factors that the Court has considered, and those other factors are success of the ‑‑ or, I'm sorry, chance of success on the merits. Here, Mr. Hernandez-Reyes stood an extremely likely chance of being granted his cancellation of removal because he was both statutorily eligible and he did have outstanding equity. He had seven United States citizen children living in California. He had extended family, both an aunt and a brother, two parents both living in Southern California. He had a solid record of employment. Wouldn't his substantial criminal record come into play there as well? It certainly would come into play, Your Honor, but that is the reason why immigration courts are given the discretion to look at all of these equities and then come to a decision. And in this case, Mr. Hernandez-Reyes at this time had no felonies. He had only misdemeanors. The reason that he was in removal proceedings was because of two of those misdemeanors. What case do you have other than Singh in which we've granted ‑‑ you said that there were exceptional circumstances. The other case that I would point to, Your Honor, would be Chet Juarez v. Ashcroft. And that case cited Singh as saying that even where there are unexceptional reasons for a petitioner showing up late, if there are other exceptional circumstances on the whole, then the petitioner can be granted a motion to reopen. But isn't there a recent case law, I think it's the Vukmirovic case, that cautions against construing the special circumstances exception broadly? Yes, Your Honor. How do we get around that? I would disagree with the statement that it goes against interpreting exceptional circumstances broadly. It did say in Vukmirovic that in that one particular circumstance the court had interpreted, you know, interpreted Singh too broadly. However, it's on a case-by-case basis. That's what Vukmirovic made clear. It did not make clear, as the government has contended, that the totality of the circumstances test should be repudiated. In fact, it actually solidified that test. It said we will abide by this test. However, in this particular case, the facts. It's not met. All right. I'm just speaking for myself. If my colleagues have other questions, I'd like to hear you talk about the evidence supporting the conviction. In terms of the sufficiency of the evidence? Sufficiency of the evidence, yes. Well, I would submit that on the briefs, Your Honor. Okay. I would prefer to talk about it. I'll take you back to the first issue and ask you. I take it you understand that is it your burden to demonstrate to us that there was a violation of due process or that the process was fundamentally unfair? Do you accept that's your obligation at this point? Yes, Your Honor. So I'd like to focus on the story that's told. He arrived. We know he arrives an hour and a half to two hours late. And he says he had a conversation with the I.J. I take it the court wasn't in session, but the I.J. happened to still be there. What does he do after that? It does not appear that Mr. Hernandez took any action after that because he was under the understanding that he would be receiving something from the court. It seems that why would he expect receiving anything other than an order of deportation, order of removal? He hadn't appeared. He was told that you weren't here. It's over. He got the impression something else would happen. But it would seem to me at that point, wouldn't he want to do something to protect his position? It seems that based upon his conversation with the immigration judge, he was led to believe that he would be receiving some opportunity to reschedule his hearing because the immigration judge When he didn't get that, what did he do? Well, he was actually only given, I don't want to say given, but he was only, he only had a month between the time that he was late for his immigration hearing and the day that he was in fact deported. So this wasn't important enough to take the time during that month? Well, had Mr. Hernandez Reyes received something, even been mailed the order of deportation, there's no indication in the record that he was actually mailed the order or that he was ever given that order. So that's what I'm suggesting. His version is that he was told he'd be getting something. He doesn't get something. He apparently doesn't have any concern over the fact he doesn't get something. He surely can't believe all his hunky-dory because he hadn't appeared for the hearing and he was told he'd faced an order of removal. He doesn't do anything. I guess it's a month later he gets actually removed. And what did he do after that? What did he do at that point in time or any time after that? To my eyes, it appears he did actually nothing other than reenter the country illegally. After that, it would be reasonable in Mr. Hernandez Reyes's position to believe that he could not do anything because he in fact had been deported. He had never been through these immigration proceedings before. He was proceeding without counsel. Now, it would be unreasonable, in fact, for him, after being deported, then to try to reopen his proceedings without ever knowing that he could reopen them. And I see that I only have a little bit of time. I'll still give you a minute for rebuttal. But I've got to tell you that my real problem here is that he somehow thinks that reentering the country knowing that he's not supposed to is a better course of action than seeing if he can fix the problem that was caused because he appeared in court too late. I certainly understand the court's concern in terms of the reentry, but that does not change the fact that he was not properly advised of his ability to reopen and that that constituted a due process violation, which is what we're dealing with. But then let's focus on that. He wasn't properly advised because he wasn't there and he was removed in absentia. I think your brief acknowledges, your client's brief acknowledges, that ordinarily removals in absentia don't come without notice because nobody's there to give notice to. Arriving an hour and a half or two hours late and talking to the I.J. informally doesn't give a real great opportunity for any kind of formal notice on the record. So what are we supposed to make of that? It's correct that in part it was Mr. Hernandez's, Reyes's fault that, well, it was his fault that he was late. The fact remains that because this relief was available, the ability to reopen the proceedings, and because he was not advised accordingly, the court could have sent something, the court could have advised him properly when he got there. That was not done and that constituted a due process violation. What does the record say about what the I.J. told him when he arrived late? Just that you're too late, that's all? Yes. The government has not offered anything as to exactly what was said. The only thing that we have is the declaration of Mr. Hernandez, Reyes, which states that he arrived approximately one and a half to two hours late. The immigration judge was the only person there in the courtroom who told him that he was late and that he would have to reschedule. He had no counsel. He was not sure what was going on and he was under the impression that he would be sent something, providing him with the ability to reschedule. We'll still give you a minute for rebuttal. Now we'll hear from the government. May it please the Court. Larry Spohn for the United States. I think Your Honor hit on a very important point, and that is there's no dispute that this hearing was set for 1 p.m. There's no dispute that the defendant here claims I was one and a half to two hours late, and yet he says when he met with the immigration judge, all that immigration judge told him was you have to reschedule. But the order has a handwritten note, the only relief is a motion to reopen, and it's timed at 2.50, which would be the time he admits he was there. It makes no sense that an immigration judge standing there would tell him you have to reschedule and then note the only real relief available and mark down the time. I think his declaration is unbelievable, and he's shown that because he lied when he came into the country. He said I'm a citizen. I was born in Bakersfield, not I'm a derivative citizen. I was born in Bakersfield. Did you have any problems with the INS before? No. So I would submit he's gotten it. He had notice. His declaration is unbelievable. If he had notice, he failed to exhaust his remedies. The case is over. But even assuming that he didn't get notice, he cannot establish exceptional circumstances here. The equities don't favor him. Yes, he has seven U.S. children. He's not married. He has two convictions for beating the woman who's the mother of his child in addition to a vandalism, another battery, and two weeks before this hearing, he's got a false person, a false personation. All misdemeanors, but that's his record. The exceptional circumstances in Singh and Chiguares are that, one, there was either relief, there was going to be relief available. Even in Valencia, Fargoza, they recognize that that is, they call that a determinative factor in Singh. That relief is not so obvious here. His only relief was cancellation from removal. But he doesn't show he's supporting his children. I believe that we just heard that he had solid employment, but he admitted on his application that at times he collected unemployment and collected assistance. This is not someone who's married with children whose family is going to be harmed, which was Singh. And the same with Chiguares. That person had a long history of being in the U.S., had strong involvement with the children and family. None of those things are available were here. In fact, what we know from the record is, in fact, these children ended up in child protective services. So this just isn't, this isn't that record. And if you have any questions on the sufficiency, I'd be happy to answer, but otherwise, thank you. In fact, we've heard enough. Thank you for the argument. We'll have rebuttal. Your Honor, with regard to Mr. Hernandez-Reyes' declaration as to what happened when he did arrive late, those were the facts below in the district court on the motion to dismiss the indictment. At that motion, the government offered no evidence to dispute that. The evidence that it offers now, the handwritten note on the order of in absentia deportation, I would argue is highly unreliable. We actually don't know who wrote that note. The testimony that the government uses to support that note was one line of trial testimony, which occurred in the context of trial and not at a motion to dismiss the indictment. And that was from the record of custodian for the government. That record of custodian had no foundation to know who wrote that note or what that note actually meant. In terms of the exceptional circumstances test, throughout this case, Mr. Hernandez-Reyes, and I think this is very important, had demonstrated the necessary diligence to pursue his immigration case. He had submitted the cancellation of removal petition. He had gone to several court hearings. This was the only hearing that he had, in fact, missed. And the government offered nothing, showing that he had ever missed another hearing. And he had a strong motive to stay in this country. And just because he was late on one occasion, he was deported in absentia, even though the court had his petition for cancellation of removal, did not advise him to reopen. That was a due process violation. And there was, in fact, a potential prejudice here, which the district court did not recognize. Thank you. We thank both counsel for your arguments. The case just argued is submitted.
judges: Tunheim, Schroeder, Clifton